IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES J. KANIA,<br>    Plaintiff, | )<br>)<br>) |
| vs | ) Civil Action No. 07-713<br>) |
| JOHN E. POTTER,<br>Postmaster General of the United States,<br>    Defendant. | )<br>)<br>)<br>) |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion to dismiss all claims in the amended complaint with the exception of the plaintiff's claims involving his 2006 non-selection for a maintenance position in Counts I and III (Document No. 14) be granted.

II. Report:

Presently before the Court is a motion to dismiss portions of the amended complaint for failure to state a viable claim submitted by the defendant, John E. Potter, Postmaster General of the United States Postal Service. For reasons discussed below, the defendant's motion to dismiss should be granted as to all claims in the amended complaint other than the plaintiff's claims involving his 2006 non-selection for a maintenance position.

The plaintiff, James J. Kania, a letter carrier for the United States Postal Service, has filed an amended complaint, alleging that the Postal Service took adverse employment actions against him in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (Count I), subjected him to a hostile work environment (Count II), and retaliated against him for engaging in protected activities (Count III). The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

The plaintiff has been employed by the Postal Service as a letter carrier since

August 16, 1997, working out of its Woods Run Carrier Facility in Pittsburgh, PA. From August 16, 1997 until February 27, 2006, the plaintiff was not subjected to any disciplinary action.

The plaintiff alleges that in January 2004, he was diagnosed with degenerative disc disease and facet syndrome which cause him excruciating pain when he performs such aspects of his letter carrier job as walking with the mail on his back; that despite his pain, he is able to perform his duties as a letter carrier; that on September 28, 2005, the Manager of the Woods Run Facility, Laureen Ault, informed him that he was being placed on limited duty pending a fitness for duty exam, at which point he had to use his sick and annual leave time to make up the difference between his limited duty and full time work schedule; that on October 20, 2005, Donald McGraw, M.D., a physician appointed by the Postal Service to examine him, opined that he was medically qualified to perform his job as a letter carrier; that nonetheless, Laureen Ault failed to restore him to full time duty, and on November 7, 2005, he used all of his sick and annual leave time and was forced to take unpaid leave; that Ault directed the plaintiff to undergo another fitness for duty exam, and on December 15, 2005, he was examined by Ann Matthew, M.D., who also opined that he was medically qualified to perform his job as a letter carrier; and that on December 23, 2005, Ault restored him to full time duty.

The plaintiff grieved his forced time off from work through his union representative, and in settlements reached on January 6, 2006 and March 22, 2006, he received remuneration from the Postal Service. On February 27, 2006, Woods Run Customer Services Manager Norbert Graf issued a letter of warning to the plaintiff for failing to scan managed service points on his route. The plaintiff insists that the scan points at issue were inaccessible. The plaintiff also complains that managers at the Woods Run Facility purposely overburdened his route, so as to make it virtually impossible for him to complete it in the time allotted.

On March 31, 2006, the plaintiff took Postal Service exams for several open maintenance positions. The plaintiff sought to transfer to the maintenance area, as those positions paid more than his letter carrier job, and he believed it would lessen his back pain. On

April 17, 2006, the plaintiff was notified that his exam scores qualified him for selection to substantially all of the maintenance positions for which he tested.

On May 10, 2006, Woods Run Customer Services Supervisor Ronda Lavezoli issued the plaintiff a seven day suspension for working unauthorized overtime, even though the plaintiff avers that Ms. Lavezoli authorized the overtime work. On May 16, 2006, Ms. Lavezoli rescinded the seven day suspension. On May 23, 2006, Lavezoli issued the plaintiff another seven day suspension for allegedly working unauthorized overtime. However, the plaintiff avers that he never worked overtime unless it was authorized by Ms. Lavezoli.

On May 11, 2006, a Postal Service Human Resources Specialist, Tracie Graham, notified the plaintiff by letter that he was being considered for a Mail Processing Equipment Mechanic Position (a "maintenance position"), which paid more than his letter carrier job. Ms. Graham forwarded the plaintiff's application to Maintenance Operations Manager James DeLeonibus for consideration. Mr. Deleonibus then requested a "Supervisor Evaluation" of the plaintiff from the Woods Run Facility, and as part of that evaluation, a supervisor was asked to describe the plaintiff's work performance. In responding to that question, Ms. Lavezoli wrote that "Mr. Kania is willing to work but unable to complete his duties in a timely manner." Ms. Lavezoli also attached a copy of the seven day suspension letter that she issued to the plaintiff on May 23, 2006. Ms. Lavezoli's "Supervisor Evaluation" was approved by Woods Run Facility's Acting Manager, Michael Graf, who is the brother of Norbert Graf, who issued the February 27, 2006 letter of warning to the plaintiff.

Mr. DeLeonibus eliminated the plaintiff from consideration for the maintenance position due to his live disciplinary record, which consisted of the February 27, 2006 letter of warning and the seven day suspension issued to him on May 23, 2006. On August 19, 2006, the plaintiff was informed by Ms. Graham that he was not selected for the maintenance position.

The plaintiff avers that on August 23, 2006, he sought pre-complaint counseling from the Postal Service. On September 20, 2006, when no resolution was reached, the plaintiff

3

filed a formal EEO complaint with the Postal Service. The plaintiff asserts that on March 2, 2007, he received a final decision by the Postal Service dismissing his complaint, after which he commenced this action.

With respect to his claim under the Rehabilitation Act, the plaintiff contends that he is a qualified individual with a disability who is otherwise qualified to perform the essential functions of his job, with or without a reasonable accommodation; that the Postal Service sought to remove him as a full time letter carrier due to its belief that he was unfit for duty because of his disability; and that failing that, it was forced to pay him due to its discriminatory acts, whereupon it retaliated against him by purposely overburdening his mail route, taking disciplinary actions against him, and sabotaging his promotion to a better-paying job. Due to these complained-of acts, the plaintiff also avers that the Postal Service subjected him to a hostile work environment and retaliated against him.

The defendant has moved to dismiss all claims in the amended complaint with the exception of the plaintiff's claims involving his 2006 non-selection for a maintenance position. In support thereof, the defendant argues that other than the plaintiff's claims involving his 2006 non-selection to a maintenance position, he failed to exhaust his administrative remedies on all claims asserted in the amended complaint by failing to bring them to the attention of an Equal Employment Opportunity ("EEO") counselor within 45 days of their occurrence as required under 29 CFR § 1614.105(a)(1). We agree.

It is provided in 29 CFR § 1614.105(a)(1):

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> > (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

The record shows that the plaintiff first initiated contact with an EEO counselor

on August 23, 2006, when he sought pre-complaint counseling. See, Amended Complaint at ¶ 28, and Declaration of Tyonia Solomon at ¶ 5 (attached as Exhibit A to the defendant's brief in support of its present motion).[1] On September 20, 2006, the plaintiff filed an EEO complaint, asserting that he was subjected to discrimination on "August 19, 2006".[2] As set forth in his EEO complaint, the plaintiff alleged as follows:

> Although I achieved the highest examination scores of all applicants for the four positions of area maintenance Technician, and was asked by Human Resources which of the four positions that I wished to accept, four other persons without my disability of lower back pain and degenerative disc disease were chosen for the positions. Additionally, management has retaliated due to my disability by falsely alleging that I am unfit for duty and unfairly disciplining me.[3]

On September 29, 2006, the Postal Service issued a "Partial Acceptance/Partial Dismissal" of the plaintiff's EEO complaint.[4] As explained therein, the Postal Service accepted for investigation only that portion of the plaintiff's EEO complaint that alleged "discrimination based on retaliation (No prior EEO Activity) and physical disability (Lower Back Pain/Degenerative Disc Disease) when: on August 19, 2006, he was informed that he was non-selected for all four of the area maintenance positions."[5] At the same time, the Postal Service

---

1. In her Declaration, Tyonia Solomon avers that she is a Paralegal Specialist for the Eastern Area Law Office of the United States Postal Service, having access to business and personnel records of the Postal Service, including in the Pittsburgh District; that her responsibilities include gathering information from Postal Service facilities and personnel to support the position of the Postal Service in lawsuits filed in Federal Court; and that she has submitted true and correct copies of documents which are part of the Report of Investigation of the plaintiff's claims which were obtained from the Postal Services's National EEO Investigative Services Office. See, Declaration of Tyonia Solomon at ¶¶ 3-4.

2. See, plaintiff's Exhibit A (attached to his brief opposing defendant's motion to dismiss).

3. Id.

4. See, plaintiff's Exhibit B (attached to his brief opposing defendant's motion to dismiss), and Attachment 2 to defendant's Exhibit A.

5. Id.

5

dismissed "as untimely brought to the attention of an EEO Counselor" the plaintiff's claims of discrimination which occurred on May 23, 2006 when he received a letter of discipline suspending him for seven days. In dismissing said claim from investigation, the Postal Service explained:

> Under part 29 C.F.R. 1614.105(a)(1), an aggrieved person must initiate contact with an EEO Counselor within 45 days of the date of the matter alleged to be discriminatory. Evidence of record indicates that complainant did not contact an EEO Counselor until August 23, 2006, which... was 92 days after May 23, 2006, when he received the letter of discipline...[6]

Plaintiff's counsel sent a letter to the EEO Compliance and Appeals Manager dated November 6, 2006, objecting to the partial dismissal of plaintiff's EEO complaint on grounds that it "alleged continuing violations of disability discrimination creating a hostile work environment" which are not time-barred.[7] However, the plaintiff never specified in the EEO complaint that he was subjected to "continuing violations" of discrimination that created "a hostile work environment". Rather, as noted above, the plaintiff specified in his EEO complaint that the alleged acts of discrimination took place on "August 19, 2006".

On February 26, 2007, the Postal Service issued a "Notice of Final Agency Decision" on the plaintiff's EEO complaint, finding no discrimination, and notifying the plaintiff of his right to file a civil action in an appropriate U.S. District Court.[8] On May 24, 2007, the plaintiff filed his original complaint in this action. On September 20, 2007, the plaintiff amended his complaint, portions of which the defendant has moved to dismiss.

In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. Estelle v.

---

6. Id.

7. See, plaintiff's Exhibit C (attached to his brief opposing defendant's motion to dismiss).

8. See, Attachment 3 to defendant's Exhibit A.

Gamble, 429 U.S. 97 (1976). To survive a motion to dismiss, a complainant's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). A complaint will be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

In ruling on the defendant's motion to dismiss, we have considered the aforesaid documents submitted by the parties. Our review of these documents does not convert the defendant's Rule 12(b)(6) motion to one for summary judgment, for the parties "may supplement the complaint by adding exhibits such as public records and other indisputably authentic documents underlying the plaintiff's claims." Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997), citing McKart v. United States, 395 U.S. 185, 193 (1969); accord, Brown v. General Services Administration, 425 U.S. 820, 832 (1976) (an aggrieved federal employee must first seek relief in the agency that allegedly discriminated against him). In cases as here, where a complainant fails to bring an alleged discriminatory matter to the attention of an EEO counselor within 45 days of its occurrence in accordance with 29 C.F.R. § 1614.105(a)(1), the claim should be dismissed for failure to exhaust administrative remedies. See, e.g., Hatcher v. Potter, 196 Fed.Appx. 120 (3d Cir. 2006); Chatt v. Potter, 2007 WL 1491401, *3 (W.D.Pa., May 21, 2007).

Here, with the exception of the plaintiff's claims of physical disability and retaliation involving his 2006 non-selection for a maintenance position (which are encompassed in Counts I and III), all other claims in the amended complaint should be dismissed for failure to exhaust administrative remedies, as the plaintiff did not timely bring them to the attention of an EEO Counselor. For instance, the plaintiff complains that on September 28, 2005, he was placed on limited duty pending a fitness for duty exam and was not restored to full time duty until

December 23, 2005; that on February 27, 2006, he was issued a letter of warning for failing to scan managed service points; and that on May 23, 2006, he was issued a seven day suspension for allegedly working unauthorized overtime. While these claims are said to entail a hostile work environment (in Count II), they were never timely brought to the attention of an EEO Counselor. Hence, they cannot lie.

In hopes of salvaging his claims that were not timely brought to the attention of an EEO Counselor, the plaintiff argues that they constitute a "continuing violation", such that they should be included in his claims. We disagree.

The United States Supreme Court has held that the continuing violation doctrine is not applicable to "[d]iscrete acts such as termination, failure to promote, denial of transfer or refusal to hire" because "[e]ach [such] incident of discrimination ... constitutes a separate actionable 'unlawful employment practice'". National RR Pasenger Corp. v. Morgan, 536 U.S. 101, 114 (2002). Our Court of Appeals has stated that in addition to those discrete acts listed in Morgan, supra, other discrete acts that constitute a separate actionable claim include: "wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006). Clearly then, the discrete, isolated events to which the plaintiff complains, recounted above, are not actionable as part of a continuing violation. Id.

Therefore, it is recommended that the defendant's motion to dismiss all claims in the amended complaint with the exception of the plaintiff's claims involving his 2006 non-selection for a maintenance position in Counts I and III (Document No. 14) should be granted.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file

timely objections may constitute a waiver of any appellate rights.

                                                Respectfully submitted,

                                                s/ ROBERT C. MITCHELL
                                                United States Magistrate Judge

Dated: November 6, 2007