IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES J. KANIA,       )
    Plaintiff,       )
           )
    vs       )   Civil Action No. 07-713
           )
JOHN E. POTTER,       )
Postmaster General of the United States,       )
    Defendant.       )

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion for summary judgment (Document No. 30) be granted.

II. Report:

Presently before the Court is a motion for summary judgment submitted by the defendant, John E. Potter, Postmaster General of the United States Postal Service. For reasons discussed below, the defendant's motion for summary judgment should be granted.

On September 20, 2007, plaintiff James J. Kania, a letter carrier for the United States Postal Service, filed an amended complaint, alleging that the Postal Service took adverse employment actions against him in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (Count I), subjected him to a hostile work environment (Count II), and retaliated against him for engaging in protected activities (Count III). The plaintiff has invoked the Court's jurisdiction pursuant to 28 U.S.C. § 1331.

On September 27, 2007, the defendant moved to dismiss all claims in the amended complaint with the exception of the plaintiff's claims involving his 2006 non-selection for a maintenance position. In a Report and Recommendation dated November 6, 2007 (the "R&R"), it was recommended that the Court grant the defendant's partial motion to dismiss, because with the exception of the plaintiff's claims of physical disability and retaliation

involving his 2006 non-selection for a maintenance position, which were encompassed in Counts I and III of the amended complaint, all other claims were subject to dismissal due to the plaintiff's failure to exhaust administrative remedies. In an Order dated December 5, 2007, the Court adopted the R&R as its opinion and granted the defendant's motion to dismiss all claims with the exception of the plaintiff's claims involving his 2006 non-selection for a maintenance position.

The defendant now moves for summary judgment on the plaintiff's remaining claims. Summary judgment is appropriate if no genuine issue of material fact is in dispute, and the movant is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); Biener v. Calio, 361 F.3d 206, 210 (3d Cir. 2004).

The plaintiff has been employed by the Postal Service as a letter carrier since August 16, 1997, and he is stationed at its Woods Run Station in Bellevue, PA. In January 2004, the plaintiff was diagnosed with facet syndrome, which degenerates the cartilage between certain discs on the left side of his back, causing him continual pain.[1]

From March 18, 2004 through June 24, 2005, the plaintiff received Family Medical Leave Act ("FMLA") certifications from the Postal Service for 53 days of absences totaling 430.5 hours of approved leave time, during which he claims he was incapable of standing and working.[2] The plaintiff asserts that during this period, Lauren B. Alt, Manager of the Woods Run Station, complained that he was absent from work too much, and she pressured him to bid off his route or apply for long-term disability, neither of which he would do.[3]

On September 28, 2005, Alt placed the plaintiff on limited duty and requested a fitness for duty exam for him, as during a street supervision of the plaintiff, he was said to have

---

1. See, plaintiff's statement of material facts at ¶¶ 65-66, and defendant's response thereto.
2. Id. at ¶ 71.
3. See, Plaintiff's declaration at ¶¶ 5-9 (attached as Exhibit 1 to his appendix of exhibits).

2

displayed an inability to maintain an acceptable walking pace and was seen taking a pill from a prescription bottle marked Oxycodone.[4] The plaintiff produced a note from Dr. Dino C. Morello dated October 4, 2005, which stated that the plaintiff was able to work as a mail carrier and drive a mail truck while taking Percocet which was prescribed for chronic back pain.[5]

On October 20, 2005, the plaintiff was examined by Postal Service physician Donald McGraw, M.D., who opined that he was medically capable of performing the essential functions of his job, but he should not drive a postal vehicle while taking Oxycodone.[6] On December 16, 2005, the plaintiff was examined by Anna Mathew, M.D., who found that he was fit for full-time duty as a letter carrier with no restrictions, but she recommended that he not use Oxycodone or Percocet until he finished his work.[7]

Thereafter, when Lauren Alt failed to restore the plaintiff to full time duty, he complained to her that he was being treated unfairly due to his disability.[8] The plaintiff grieved his forced time off from work through his union representative, and he was subsequently returned to full-time duty; in settlements reached on January 6, 2006 and March 22, 2006, the plaintiff was granted back pay for the hours he lost while placed on limited duty.[9]

On February 27, 2006, after the plaintiff had returned to full-time duty, supervisor Norbert Graf issued him a letter of warning for missing four managed scan points on his route on February 21, 2006. The plaintiff avers that no scan points were missed on that day, and when he confronted Graf about it, Graf told him that supervisor Ronda Lavezoli told him to issue the

---

4. See, plaintiff's statement of material facts at ¶¶ 75-76, and plaintiff's Exhibit 42.
5. See, defendant's Exhibit L, attached to his appendix of exhibits.
6. See, defendant's Exhibit M, attached to his appendix of exhibits.
7. See, defendant's Exhibit N, attached to his appendix of exhibits.
8. See, plaintiff's declaration at ¶¶ 13-14.
9. Id. at ¶ 15.

letter, and that Lavezoli and Alt were mad at him for filing his grievance.[10]

In early March 2006, the plaintiff applied for positions in the Maintenance Department, as it represented a promotional opportunity, and his back pain had worsened from carrying the mail.[11] The plaintiff passed the appropriate qualifying exams and interviews, and he was the only applicant on the in-service register.[12] On May 9, 2006, the plaintiff received correspondence from Tracie Graham, a Postal Service human resources manager, canvassing him for the positions of Mail Processing Equipment Mechanic (MPE-8) and/or Building Equipment Mechanic (BEM-8) in the Maintenance Department.[13]

On the morning of May 10, 2006, the plaintiff informed Ms. Lavezoli, his immediate supervisor, and Michael Graf, the Acting Manager of Woods Run Station, that he intended to transfer to the Maintenance Department.[14] On the afternoon of May 10, 2006, the plaintiff indicated that he was interested in applying for both of the aforesaid positions.[15]

On May 12, 2006, Michael Graf issued the plaintiff a seven day suspension for allegedly working unauthorized overtime on April 19, 20, 23 and 24, 2006.[16] However, the plaintiff was on leave on those dates, and so he could not have worked overtime.[17] When the plaintiff brought the matter to the attention of Michael Graf, his suspension was rescinded, and then reissued with new dates on May 17, 2006, even though those revised dates do not appear on

---

10. See, plaintiff's statement of material facts at ¶¶ 84-85.
11. See, plaintiff's declaration at ¶ 17.
12. Id. at ¶ 18, and plaintiff's statement of material facts at ¶ 91.
13. See, plaintiff's statement of material facts at ¶ 92 and defendant's response thereto.
14. See, plaintiff's declaration at ¶ 21.
15. See, plaintiff's statement of material facts at ¶ 95 and defendant's response thereto.
16. Id. at ¶ 96.
17. Id. at ¶ 97.

Postal Service records of unauthorized overtime.[18]

On or about July 13, 2006, the plaintiff informed Tracie Graham that he wanted to be considered for the BEM-8 position.[19] On July 14, 2006, Graham forwarded a "Supervisor Evaluation" of the plaintiff -- prepared by his supervisor, Ronda Lavezoli -- to Thomas Graf, the Manager of the Maintenance Department; in that evaluation, Ms. Lavezoli wrote that "Mr. Kania is willing to work but unable to complete his duties in a timely manner."[20] In her evaluation of the plaintiff, Lavezoli also attached a copy of the seven day suspension letter that was issued to him on May 17, 2006.[21]

Thomas Graf is the brother of Michael Graf and Norbert Graf, both of whom issued discipline to the plaintiff as recounted above.[22] Thomas Graf provided Maintenance Supervisor James DeLeonibus with Ms. Lavezoli's evaluation of the plaintiff, and he had Mr. DeLeonibus review the plaintiff's application.[23]

On August 15, 2006, Mr. DeLeonibus denied the plaintiff's transfer to the Maintenance Department, finding that his work record was not satisfactory.[24] In a letter dated August 18, 2006, Tracie Graham informed the plaintiff that he was denied reassignment to the BEM-8 position due to his unacceptable work record.[25] James DeLeonibus explained at his

---

18. Id. at ¶ 98.

19. See, plaintiff's Exhibit 8, attached to his appendix of exhibits.

20. See, plaintiff's statement of material facts at ¶ 101, defendant's response thereto, and plaintiff's Exhibit 11, attached to his appendix of exhibits.

21. See, plaintiff's Exhibit 11, attached to his appendix of exhibits.

22. See, plaintiff's statement of material facts at ¶¶ 104-105 and defendant's response thereto.

23. Id. at ¶¶ 102, 106.

24. Id. at ¶ 107, and plaintiff's Exhibit 22, attached to his appendix of exhibits.

25. See, defendant's Exhibit K, attached to his appendix of exhibits.

deposition that he found the plaintiff's work record unacceptable because he had "live discipline".[26] That is, at the time of DeLeonibus' review, the plaintiff had the aforesaid letter of warning and a seven day suspension in his record.[27]

On September 18, 2006, the plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint with the Postal Service.[28] On September 29, 2006, the plaintiff was issued a partial acceptance/partial dismissal of his EEO complaint.[29] The Postal Service accepted for investigation only that portion of the plaintiff's EEO complaint that alleged discrimination based on retaliation and physical disability when on August 19, 2006, he was informed that he was not selected for the maintenance positions.[30] On March 2, 2007, the plaintiff received a final decision by the Postal Service dismissing his complaint[31], after which he commenced this action.

We must now discern whether the defendant is entitled to summary judgment on the plaintiff's claims of disability discrimination and retaliation under the Rehabilitation Act in connection with his 2006 non-selection for a maintenance position. As to the plaintiff's claim of disability discrimination, summary judgment is appropriate, as he has failed to establish a prima facie case of discrimination.

Under the Rehabilitation Act, employers are forbidden from discriminating against persons with disabilities in matters of hiring, placement, or advancement. Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). In Wishkin, the Court explained that "[t]he

---

26. See, defendant's Exhibit H at deposition p. 36, attached to his appendix of exhibits.

27. See, defendant's statement of material facts at ¶ 20, citing to Exhibit J, attached to defendant's appendix of exhibits.

28. See, defendant's statement of material facts at ¶ 1 and plaintiff's response thereto.

29. Id. at ¶ 4.

30. See, defendant's Exhibit B, attached to his appendix of exhibits.

31. See, defendant's Exhibit C, attached to his appendix of exhibits.

Rehabilitation Act expressly makes the standards set forth in the 1990 Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ["ADA"], applicable to federal employers and to employers receiving federal funding." Id., citing 29 U.S.C. § 791(g).

In addressing the allocations of burdens of proof and persuasion in cases arising under the Rehabilitation Act, courts utilize the three-stage shifting burden of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793-94 (1973). See, Newman v. GHS Osteopathic, Inc., 60 F.3d 153, 157-58 (3d Cir. 1995). Under that framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802.

To establish a prima facie case of discrimination under the Rehabilitation Act, the plaintiff must show that: (1) he has a "disability", (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) was prevented from performing his job. Wishkin, 476 F.3d at 184-85; Donahue v. Consolidated Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000). The defendant argues that the plaintiff cannot establish the first prong of his prima facie case, as he did not have a "disability" as defined by the Rehabilitation Act. We agree.

In relevant part, the Rehabilitation Act defines an "individual with a disability" as any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment. 29 U.S.C. § 705(20)(B). The ADA similarly defines the term "disability" with respect to an individual. See, 42 U.S.C. § 12102(2).

Here, the plaintiff bases his claim of a disability on all three subsections above. First, he asserts that his facet syndrome constitutes a physical impairment which substantially limits his major life activities of standing, walking and working.

The United States Supreme Court has stated that "[m]erely having an impairment does not make one disabled for purposes of the ADA." Toyota Motor Manufacturing, Kentucky,

7

Inc. v. Williams, 534 U.S. 184, 195 (2002). Rather, to qualify as disabled, a claimant must also demonstrate that the impairment substantially limits a "major life activity". Id.

"Major life activities" include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R.§ 1630.2(i) (1997). That list is not exhaustive, as "major life activities" also include sitting, standing, lifting and reaching. 29 C.F.R.§ 1630, App. § 1630.2(i).

EEOC regulations interpret the term "substantially limits" to mean:

Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1)(ii) (1997). Indeed, the word "substantial" in the phrase "substantially limits" "clearly precludes impairments that interfere in only a minor way with the performance of [a major life activity] from qualifying as disabilities". Toyota Motor Mfg., 534 U.S. at 197. "Only extremely limiting disabilities, either in the short term or the long term, qualify for protected status". Robinson v. Lockheed Martin Corp., 212 Fed. Appx. 121, 2007 WL 38345, *2 (3d Cir., Jan. 8, 2007), citing Marinelli v. City of Erie, 216 F.3d 354, 362 (3d Cir. 2000).

Although the plaintiff claims that his facet syndrome "substantially limits" his major life activities of walking and standing, the record shows otherwise. The plaintiff has continued to work as a mail carrier from the time of his 2006 non-selection for a maintenance position to the present with no accommodation. At his deposition, the plaintiff testified that despite his back pain, he does not have to wear a brace or use a cane or any assistive device to stand, walk or work; that he has no limitations on what he can do, and his doctors have placed no physical limitations on him; and that doctors have cleared him to work as a mail carrier.[32]

---

32. See, defendant's Exhibit I at plaintiff deposition pp. 23-24, attached to his appendix of exhibits. We note that on March 10, 2008, Patrick N. Smith, M.D. performed an Independent Medical Evaluation of the plaintiff and opined that his facet syndrome "seems to interfere with
(continued...)

8

Further, the record shows that in September of 2005, while the plaintiff was undergoing fitness for duty exams, he performed renovations at his son's duplex and was involved in painting rooms, and installing new flooring and drywall[33]; that during the summer of 2007, the plaintiff, with the assistance of friends and his sons, renovated his former home[34]; and that prior to moving in to his new residence in November of 2007, the plaintiff painted the first floor bedroom and living room, removed drop ceilings and installed hard wood floors.[35]

In Kelly v. Drexel University, 94 F.3d 102 (3d Cir. 1996), the Court held that a man who had a noticeable limp due to a hip injury, could not walk more than a mile without stopping, and had to climb stairs slowly was not "disabled" under the ADA, as the Court found such restrictions on his ability to walk were "comparatively moderate". Id. at 103-106. In Taylor v. Pathmark Stores, Inc., 177 F.3d 180 (3d Cir. 1999), the Court held that a plaintiff who underwent surgery for an ankle problem and used a prosthetic shoe to ease his pain, could stand and walk for fifty minutes without the need to rest or use an assistive device (after which, if he wanted to stand longer, he needed a cane or a crutch) was not substantially limited in the major life activities of walking and standing. Id. at 186-187. The Court explained that because the plaintiff could stand and walk for fifty minutes at a time, and for longer periods if he took a break every hour, his ability to stand and walk was not significantly less than that of the average person, and he could carry out most activities that required standing and walking. Id.

---

32. (...continued)
his abilities to perform certain activities, particularly as it relates to his occupation ... and that over the next several years there would be greater deterioration in his condition if he were to continue in his current occupation". See, plaintiff's Exhibit 39, attached to his appendix of exhibits. However, as the defendant points out, Dr. Smith's March 10, 2008 report was issued well after the plaintiff's August 2006 non-selection for a maintenance position, and nowhere in his report does Dr. Smith opine that the plaintiff was disabled or substantially limited in his ability to perform a major life activity at anytime prior to his non-selection.

33. See, defendant's statement of material facts at ¶¶ 55-57.

34. Id. at ¶¶ 49-51.

35. Id. at ¶¶ 52-53.

Here, the plaintiff has not produced evidence of restrictions on his ability to stand and walk during the relevant time period that would compel a finding he is disabled. Having failed to show that his facet syndrome substantially limits his major life activities of standing and walking, we turn to his claim that his impairment substantially limits his ability to work.

The United States Supreme Court has counseled:

> When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. Reflecting this requirement, the EEOC uses a specialized definition of the term 'substantially limits' when referring to the major life activity of working:
>
>> 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'

Sutton v. United Air Lines, 527 U.S. 471, 491 (1999), quoting 29 C.F.R. § 1630.2(j)(3)(i) (1998). Thus, "[t]o be substantially limited in the major life activity of working..., one must be precluded from more than one type of job, a specialized job, or a particular job of choice." Sutton, 527 U.S. at 492.

Here, the plaintiff has not demonstrated that he is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes when compared to the average person with comparable qualifications; as such, he is not substantially limited in his ability to work. Based on the foregoing, the plaintiff has failed to show that his physical impairment substantially limits a major life activity.

The plaintiff also claims he is "disabled" under the Rehabilitation Act because he has a "record of such an impairment". In support thereof, the plaintiff avers that Postal Service health records reflect that he did not work from April 10, 2004 through April 28, 2004 due to

back pain[36], and from March 18, 2004 through June 24, 2005, he received FMLA certifications for 53 days of absences, during which he claims he was incapable of standing and working.[37]

However, to prove a record of a disability, the plaintiff must demonstrate that the recorded impairment is a disability. Nicholson v. West Penn Allegheny Health System, 2008 WL 4636353, *3 (3d Cir., Oct. 21, 2008), citing Tice v. Ctr. Area Transp. Auth., 247 F.3d 506, 513 (3d Cir. 2001). This the plaintiff has not shown.

For instance, while Postal Service health records reflect that the plaintiff did not work from April 10, 2004 through April 28, 2004 due to back pain, the plaintiff has not shown that his back pain constituted a disability as defined in the Rehabilitation Act. With respect to the plaintiff's instances of FMLA medical leave, the Third Circuit Court of Appeals has counseled that incidents of FMLA medical leave are insufficient to establish a "disability" under the Rehabilitation Act, "because the FMLA and Rehabilitation Act call for differing analyses." Nicholson 2008 WL 4636353, at *3, citing 29 C.F.R. § 825.702(b). Accordingly, the plaintiff has not established a record of a disability.

In addition, the plaintiff has failed to show that the Postal Service regarded him as having an impairment. A person is "regarded as" having an impairment if he:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 381 (3d Cir. 2002).

The United States Supreme Court has stated: "[t]here are two apparent ways in

---

36. See, plaintiff's Exhibit 35, attached to his appendix of exhibits.

37. See, plaintiff's statement of material facts at ¶ 71 and defendant's response thereto.

which individuals may fall within [the 'regarded as' definition of a disability]:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

Sutton, 527 U.S. at 489.

Here, no evidence shows that the Postal Service improperly perceived the plaintiff's facet syndrome as substantially limiting one of his major life activities when he was not selected for a maintenance position. James DeLeonibus, the Maintenance Supervisor who reviewed the plaintiff's application and denied his transfer, testified that he was not aware of the plaintiff's physical ailments at the time of his decision.[38] Mr. DeLeonibus averred that no information was provided to him about the plaintiff's physical abilities at any time during his evaluation of the plaintiff's application, and the plaintiff's medical condition was not a factor in his decision to deny his transfer.[39] The plaintiff has not rebutted these averments. Since the record fails to show that the Postal Service erroneously perceived the plaintiff as being substantially limited in a major life activity, it did not regard him as having a disability as a matter of law.

Based on the foregoing, the plaintiff has failed to establish a prima facie case of discrimination. Thus, the defendant is entitled to summary judgment on the plaintiff's claim of disability discrimination in connection with his 2006 non-selection for a maintenance position.

The defendant also moves for summary judgment on the plaintiff's retaliation claim. To establish a prima facie case of retaliation under the Rehabilitation Act, the plaintiff

---

38. See, defendant's Exhibit H at deposition p. 40, attached to his appendix of exhibits.

39. Id.; also see, defendant's Exhibit G, attached to his appendix of exhibits.

must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Ozlek v. Potter, 259 Fed. Appx. 417, 422 (3d Cir. 2007), quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 498 (3d Cir. 1997).

The defendant argues that the plaintiff cannot establish a prima facie claim of retaliation with regard to his 2006 non-selection for a maintenance position, as the plaintiff did not engage in prior EEO activity concerning his non-selection, and to the extent he engaged in protected activity, he cannot show a causal connection between it and James DeLeonibus' failure to select him for a maintenance position. We agree.

At his deposition, the plaintiff clarified the contours of his retaliation claim. Significantly, the plaintiff testified that his retaliation claim does not arise from his non-selection for a maintenance position.[40] Indeed, the plaintiff confirmed he is not claiming that James DeLeonibus retaliated against him by not selecting him for a maintenance position.[41]

Instead, the plaintiff testified that his retaliation claim is based on the letter of warning he received from Norbert Graf (for allegedly missing scan points) and the seven-day suspension that was issued to him by or through Ronda Lavezoli (for allegedly working unauthorized overtime), which he believes constituted "bogus disciplinary action" in an attempt to have him removed as a letter carrier.[42] The record shows, however, that the plaintiff failed to exhaust his administrative remedies on his claim of retaliation involving the aforesaid letters of discipline by failing to bring them to the attention of an EEO counselor within 45 days of their

---

40. See, defendant's Exhibit I at plaintiff's deposition p. 37.

41. Id. at plaintiff's deposition p. 60.

42. Id. at plaintiff's deposition pp. 37-38.

13

occurrence as required under 29 CFR § 1614.105(a)(1).[43] The plaintiff concedes that he did not file a timely EEO complaint as to those alleged acts of retaliation.[44]

In our R&R dated November 6, 2007, we explained that where a complainant fails to bring an alleged discriminatory matter to the attention of an EEO counselor within 45 days of its occurrence in accordance with 29 C.F.R. § 1614.105(a)(1), as here, the claim should be dismissed for failure to exhaust administrative remedies.[45] See, McCann v. Astrue, 2008 WL 4298835, *1 (3d Cir., Sept. 16, 2008). That is why, in an Order dated December 6, 2007, the Court dismissed all claims in the amended complaint with the exception of the plaintiff's claims involving his 2006 non-selection for a maintenance position.

As to his 2006 non-selection for a maintenance position, the plaintiff admits that he did not engage in the EEO process prior thereto.[46] Still, the plaintiff asserts that he engaged in protected activity beginning on September 28, 2005, after Lauren Alt placed him on limited duty, when he complained to Alt and Ronda Lavezoli that he was being treated unfairly due to his disability and demanded that he be restored to full-time duty.[47] The plaintiff avers that when he was not restored to full-time duty, he filed a grievance with his union representative, after which

---

43. See, our R&R dated November 6, 2007 at pp. 4-7. It is provided in 29 CFR § 1614.105(a)(1) that:
    (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
    (1) An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

44. See, defendant's Exhibit I at plaintiff's deposition pp. 38, 40.

45. See, R&R at p. 7.

46. See, defendant's Exhibit I at plaintiff's deposition pp. 38-39. Rather, the plaintiff filed an EEO complaint on September 18, 2006, after he was notified by letter dated August 18, 2006 that James DeLeonibus had failed to select him for a maintenance position.

47. See, plaintiff's declaration at ¶ 14.

14

he was returned to full-time duty.[48] We agree that the plaintiff's aforesaid acts of complaining to his supervisors and filing a grievance constitute protected activity. See, Andreoli v. Gates, 482 F.3d 641, 650 (3d Cir. 2007); Abramson v. Wm. Patterson College of N.J., 260 F.3d 265, 287-88 (3d Cir. 2001).

Nonetheless, the plaintiff cannot show a causal connection between his protected activity and his 2006 non-selection for a maintenance position. To show a causal connection between his complaints of discrimination and his 2006 non-selection, the plaintiff must show that the official responsible for his non-selection -- here, James DeLeonibus -- was aware that he engaged in protected activity. See, Red v. Potter, 211 Fed. Appx. 82, 85 (3d Cir. 2006) (to establish the requisite causal connection to support a prima facie case, the plaintiff must show that officials responsible for her adverse employment action were aware of her EEO filings at the time of their acts), citing Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998). Accord, McCann v. Winslow Tp., 2007 WL 4556964, *5 (D.N.J., Dec. 20, 2007).

Here, James DeLeonibus was the sole official responsible for denying the plaintiff's request to transfer to a maintenance position.[49] Mr. DeLeonibus testified that at the time he made his decision not to select the plaintiff for a maintenance position, he was not aware of any EEO activity that the plaintiff had engaged in.[50] Further, Mr. DeLeonibus testified that in making his decision, he had no information which indicated that the plaintiff had ever complained about being discriminated against or retaliated against.[51]

The plaintiff admits he has no evidence to show that James DeLeonibus is not

---

48. Id. at ¶ 15.

49. See, defendant's Exhibit G, attached to his appendix of exhibits, and defendant's Exhibit I at plaintiff's deposition p. 36.

50. See, defendant's Exhibit H at deposition p. 40.

51. Id. at deposition pp. 41-42.

telling the truth.[52] Further, as previously mentioned, the plaintiff is not even claiming that DeLeonibus retaliated against him when he failed to select him for a maintenance position.[53] Having failed to show a causal connection between his protected activity and his 2006 non-selection for a maintenance position, the plaintiff has not established a prima facie case of retaliation.

Therefore, it is recommended that the defendant's motion for summary judgment (Document No. 30) be granted.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/ ROBERT C. MITCHELL
United States Magistrate Judge

Dated: December 3, 2008

---

52. See, defendant's Exhibit I at plaintiff's deposition p. 36.

53. Id. at plaintiff's deposition pp. 36-37, 60.